UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES DISTRICT COURT
FILED
AUG 17 2022
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

———————————————————

GARY C.[1],

                          Plaintiff,

        -v-

COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.

———————————————————

1:20-CV-01358-MJR
DECISION AND ORDER

        Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States
Magistrate Judge conduct all proceedings in this case. (Dkt. No. 16)

        Plaintiff Gary C. brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3)
seeking judicial review of the final decision of the Commissioner of Social Security
("Commissioner") denying his Disability Insurance Benefits ("DIB") under the Social
Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant
to Rule 12(c) of the Federal Rules of Civil Procedure.

        For the following reasons, plaintiff's motion (Dkt. No. 12) is denied and the
Commissioner's motion (Dkt. No. 14) is granted.

                          **BACKGROUND**[2]

        Plaintiff filed for DIB on November 27, 2017, alleging disability beginning June 11,
2013. (*See* Tr. 157-68)[3] Plaintiff's disability benefits application was initially denied on

_____

[1] In accordance with the November 18, 2020 Standing Order, issued by the Hon. Frank P.
Geraci, Jr., Chief Judge of the United States District Court for the Western District of New York,
this Decision and Order will identify plaintiff using only his first name and last initial.
[2] The Court assumes the parties' familiarity with plaintiff's medical history, which is summarized
in the moving papers. The Court has reviewed the medical record, but cites only the portions of
it that are relevant to the instant decision.
[3] References to "Tr." are to the administrative record in this case.

March 23, 2018. (Tr. 74-83) Plaintiff timely filed a written request for a hearing on April 2, 2018. (Tr. 84-85) A hearing was held before Administrative Law Judge Paul Georger ("the ALJ") on November 13, 2019. (Tr. 29-58) Plaintiff, who was represented by counsel, testified at the hearing.[4] (*Id.*) The ALJ also received testimony from Vocational Expert Mary Vasishth ("the VE"). (*Id.*) On January 4, 2020, the ALJ issued a decision finding that plaintiff was not disabled under the Act. (Tr. 15-28) The Appeals Council denied plaintiff's request for review of the ALJ's determination on July 31, 2020, and this action followed. (Tr. 1-6)

Born on January 3, 1965, plaintiff was 54 years old on the date of the disability hearing. (Tr. 36-38, 157) Plaintiff has a high school education and previously worked as a manager at Right Aid. (*Id.*)

## DISCUSSION

I.   *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential.  Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the

---

[4] At the hearing, plaintiff's alleged disability onset date was amended to September 18, 2013. (Tr. 38)

Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (*quoting Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.     *Standards for Determining "Disability" Under the Act*

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age,

education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §423(d)(2)(A). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (*quoting Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §404.1520(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §404.1520(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the

4

severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §404.1520(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §404.1520(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five.  At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §404.1520(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §404.1520(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries their burden through the first four steps, "the burden then shifts to

the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III.   *The ALJ's Decision*

The ALJ first found that plaintiff meets the insured status requirements of the SSA through December 31, 2018. (Tr. 17) The ALJ then followed the required five-step analysis for evaluating plaintiff's claim. Under step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since his alleged onset date through his date last insured. (*Id.*) At step two, the ALJ found that plaintiff has the severe impairments of obesity and recurrent anal fissures.[5] (*Id.* at 17-19) At step three, the ALJ determined that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 19) Before proceeding to step four, the ALJ found that:

> [T]he claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can climb ramps and stairs occasionally, climb ladders, ropes, or scaffolds occasionally and balance, stoop, kneel, crouch and crawl occasionally. He required a sit/stand option and required the ability to change positions every 30 minutes.[6]

(Tr. 19-22) Proceeding to step four, the ALJ found that plaintiff was not capable of performing any past relevant work. (Tr. 22-23) At step five, the ALJ considered plaintiff's

---

[5] Also at step two, the ALJ concluded that plaintiff's medically determinable impairment of generalized anxiety disorder did not cause more than minimal limitation in plaintiff's ability to perform basic work activities and was therefore non-severe. (Tr. 17) The ALJ also noted that while plaintiff alleges lower back pain, there was no evidence in the record that his back pain rose to the level of a medically determinable impairment. (Tr. 18)

[6] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm or leg controls. *See* 20 C.F.R. §404.1567(b).

age, education and RFC and found that there are jobs that exist in significant numbers in the national economy that plaintiff can perform, such as cashier, price marker, and photocopy machine operator. (Tr. 23-24) The ALJ ultimately concluded that plaintiff has not been under a disability, as defined by the Act, from the alleged onset date through the date of the decision. (Tr. 24)

IV.     _Plaintiff's Challenges_

Plaintiff argues that the ALJ erred in finding that his subjective complaints were not supported by the record. (_See_ Dkt. No. 12 (Plaintiff's Memo. of Law)) For the following reasons, the Court disagrees.

Social Security regulations provide that statements of subjective pain alone cannot establish a disability. _Genier v. Astrue_, 606 F.3d 46, 49 (2d Cir. 2010); _citing_ 20 C.F.R. §404.1529(a). Instead, an evaluation of subjective complaints should reflect a two-step analysis. _See_ 20 C.F.R. §§ 404.1529, 416.929.[7] First, the ALJ must determine whether the evidence reflects that the claimant has a medically determinable impairment or impairments that could produce the relevant symptoms. _Id_. Next, the ALJ must evaluate "the intensity, persistence, or functionally limiting effects of [the] symptom[s]." _Id_. To that end, an ALJ should weigh the following factors:

> (1) the claimant's daily activities; (2) [t]he location, duration, frequency and intensity of [the claimant's] pain or other symptoms; (3) [p]recipitating and aggravating factors; (4) [t]he type, dosage, effectiveness, and side effects of any medication the claimant take[s] or ha[s] taken to alleviate [his or her] pain or other symptoms; (5) [t]reatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of [his or her] pain or other symptoms; (6) [a]ny measures [the claimant] us[es] or ha[s] used to relieve

---

[7] The evaluation of symptoms outlined in these regulations was previously referred to as a "credibility assessment." Recent guidance clarified that the sub-regulatory policy will no longer use the term "credibility" because "subjective symptom evaluation is not an examination of an individual's character." _See_ SSR 16-3p, 2016 SSR LEXIS 4, 2017 WL 5180304, *1 (Oct. 25, 2017).

[his or her] pain or other symptoms…; and (7) [o]ther factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

*See* 20 C.F.R. §§ 404.1529(c)(3)(i)-(viii), 416.929(c)(3)(i)-(vii). If the ALJ rejects a claimant's subjective testimony after considering the objective medical evidence and any other factors deemed relevant, the ALJ must explain that decision "explicitly and with sufficient specificity that a reviewing court must be able to decide whether there are legitimate reasons for the ALJ's disbelief and whether [the] decision is supported by substantial evidence." *Norman v. Astrue*, 912 F. Supp. 2d 33, 43 (S.D.N.Y. 2012).

During the hearing, plaintiff testified that he is unable to work due to severe back pain that radiates through his buttocks, midsection, and upper legs. (Tr. 20, 39-40) Plaintiff testified that the pain intensifies with strenuous work, lifting, carrying, and prolonged sitting or moving around. (Tr. 20, 40) Plaintiff further testified that he suffers from anal fissures and constipation which affect him daily, and that strenuous activity causes him to experience problems urinating and moving his bowels. (Tr. 20, 39, 44) He stated that he can sit or stand for forty-five minutes at a time and cannot lift more than ten pounds. (Tr. 50-51) Plaintiff also testified that when he was employed, he frequently missed work or left early due to pain. (Tr. 57) The ALJ ultimately concluded that while plaintiff's medically determinable impairments could reasonably be expected to cause these symptoms, plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 20)

The hearing decision reflects that the ALJ appropriately considered the relevant factors when deciding not to fully credit plaintiff's subjective descriptions of his pain and

other physical limitations. For example, the ALJ indicated that plaintiff was diagnosed with anal fissures and anal spasms, but that these conditions were responsive to Botox injections and Nifedipine ointment, which works a muscle relaxer. (Tr. 20; *referring to* Tr. 43-44, 64-65, 244-49, 253, 360, 371-74 385-86, 397-404, 589, 595-600, 603, 616-23, 647, 651, 660) The ALJ acknowledged that plaintiff experienced constipation and rectal pain as well as rectal itching and pressure, which caused inflammation in his urethra. (Tr. 20-21) However, the ALJ further noted that plaintiff's constipation was intermittent; that plaintiff did not experience any weight loss; and that a 2012 colonoscopy revealed no significant problems. (Tr. 20-21; *referring to* Tr. 249, 277, 399) The ALJ also noted that plaintiff was seen in the emergency room in 2012 for abdominal pain, back pain, and constipation, and that he descripted his symptoms as mild at that time. (Tr. 21; *referring to* Tr. 296) The ALJ further emphasized that plaintiff had no complaints of rectal pain between November 2012 and November 2014. (Tr. 21; *referring to* Tr. 309, 417-577) Moreover, plaintiff did not return to the emergency room for complaints of rectal pain until April 2016, at which time he described his symptoms as moderate in severity. (Tr. 21) The ALJ noted that plaintiff reported some irregular stools in June 2017, but also acknowledged improvement in his symptoms since restarting Nifedipine. (Tr. 21; *referring to Tr.* 400-01)

The ALJ went on to explain that during a medical appointment in September 2017, plaintiff reported that the topical cream was no longer effective and was advised to try a high fiber diet, increased water intake, and Botox injections. (Tr. 21; *referring to* Tr. 404-05, 618) The ALJ noted that plaintiff responded well to his first injection. (*Id.*) The ALJ similarly indicated that in March 2018, plaintiff was advised to increase his fiber and water

intake, continue taking Milk of Magnesia, and resume use of Nifedipine in response to his complaints of recurrent anal fissures and recurrent constipation with minor discomfort. (Tr. 21; *referring to* Tr. 600-02) The ALJ further considered that while plaintiff had complaints of urinary difficulties, these only occurred when he was experiencing bowel issues. (Tr. 21; *referring to* Tr. 559-60) The ALJ noted that plaintiff was seen for a follow-up in April 2019 where he continued to report poor bowel movements and abdominal cramping, but also admitted to a poor diet of meat and potatoes. (Tr. 22; *referring to* Tr. 601-02) The ALJ further pointed to the record showing that plaintiff's examination was within normal limits and that plaintiff was again reminded to follow a high fiber diet, add a gummy probiotic to his daily routine, and increase Milk of Magnesia to twice a day. (Tr. 22; *referring to* 601-02)

With regard to plaintiff's complaints of severe back pain which prevents him from working, the ALJ acknowledged plaintiff's hearing testimony that he experiences pain and stiffness in his lower back radiating to his buttocks. (Tr. 18) Moreover, the ALJ recognized that an x-ray taken during a consultative examination by Dr. H. Liu on February 26, 2018 showed that plaintiff had mild degenerative joint disease. (Tr. 18, 583-84) The ALJ also weighed the fact that Dr. Liu found plaintiff to have decreased range of motion in the lumbar spine and positive straight leg raising, but no other limitations. (*Id.*) The ALJ further considered plaintiff's own testimony that he experienced relief from back pain with ibuprofen and/or Aleve, use of a heating pad, and chiropractic manipulation. (Tr. 18-19) The ALJ also noted that plaintiff did not have surgery for this condition.[8] (Tr. 18-19)

---

[8] During the hearing, plaintiff testified that he had not been given any prescription pain medication for his back besides muscle relaxers and that none of his doctors proposed surgery to alleviate the pain. (Tr. 42)

The ALJ also appropriately considered plaintiff's daily activities when evaluating plaintiff's complaints of pain and other physical limitations. For example, the ALJ noted that plaintiff reported being able to care for himself, make simple meals, do yardwork, and regularly drive his parents shopping and to appointments. (Tr. 20; *referring to* Tr. 45-47) The ALJ also considered plaintiff's self-reported abilities to walk around the block, and to both sit and stand for up to 45 minutes at a time. (Tr. 20; *referring to* Tr. 47-51)

After acknowledging and discussing all of the medical and other record evidence summarized above, the ALJ concluded that plaintiff's subjective complaints as to the severity of his pain and other symptoms were not fully supported by the record, and that plaintiff remained capable of performing light work with some additional restrictions. (Tr. 22) In reaching this conclusion, the ALJ appropriately considered plaintiff's subjective complaints in light of the objective medical evidence. For example, the ALJ expressly considered the location, duration, and intensity of plaintiff's pain and other symptoms as reflected in the medical records, as well how plaintiff himself described the severity of his pain and other symptoms during medical appointments and emergency room visits. Also, in accordance with the regulations, the ALJ gave significant consideration to how plaintiff's symptoms responded to medication and other forms of treatment. Indeed, the ALJ found that while plaintiff was diagnosed with anal fissures which caused rectal pain and other bowel or urinary problems, the medical evidence showed that these symptoms were mild to moderate at best and that plaintiff's condition improved with medication and Botox injections. Plaintiff was also advised to eat a high fiber diet which he did not consistently follow. Likewise, the ALJ concluded that plaintiff did experience back pain as a result of mild degenerative joint disease. However, the ALJ found that both the medical

evidence in the record as well as plaintiff's testimony did not support plaintiff's characterization of the pain as so disabling as to prevent him from performing any substantial gainful activity. The ALJ also logically concluded that evidence and testimony of plaintiff's daily activities was inconsistent with plaintiff's representations that he was fully disabled from any type of work. *See Collins v. Comm'r of Soc. Sec.*, 19-CV-00298; 2020 U.S. Dist. LEXIS 176556 (W.D.N.Y. Sept. 24, 2020) (in rejecting plaintiff's complaints of pain and disabling limitations, the ALJ properly discussed objective medical evidence, treatment and response to treatment, activities of daily living, and medical expert opinion evidence); *Reyna v. Comm'r of Soc. Security*, 18-CV-00636, 2019 U.S. LEXIS 171186 (W.D.N.Y. Sept. 6, 2019) (ALJ's decision to reject plaintiff's subjective complaints of pain was well supported in light of conservative treatment, plaintiff's activities of daily living and plaintiff's testimony that she used medication, a heating pad, stretching and rest for relief of discomfort); *Benique v. Kijakazi*, 20-CV-3243, 2021 U.S. Dist. LEXIS 173707 (S.D.N.Y. Sept. 10, 2021) ("[T]he ALJ's assessment of Plaintiff's subjective complaints, based on reasonable factors and supported by substantial evidence, should be afforded deference.").

In sum, the Court finds that the ALJ applied the proper legal standards in rejecting the severity of plaintiff's subjective complaints and that substantial evidence supports the ALJ's determination. Plaintiff's challenge amounts to a disagreement with the ALJ's weighing of the evidence. However, it is not the Court's position to weigh conflicting evidence in the record and "[i]f evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). Likewise, under the substantial evidence standard of review,

it is not enough for plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that evidence in the record could support his position. See *Warren v. Comm'r of Soc. Sec.*, 3:15-CV-1185, 2016 U.S. Dist. LEXIS 171746, (N.D.N.Y. Nov. 18, 2016). Rather, he must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record. *Id.* Plaintiff has not made such a showing here. In fact, the ALJ's decision demonstrates an appropriate weighing of all record evidence, including the conflicting evidence. *See Casey v. Comm'r of Soc. Sec.*, 7:13-947, 2015 U.S. Dist. LEXIS 123560 (N.D.N.Y. July 11, 2015) ("It is the province of the [ALJ] to consider and resolve conflicts in the evidence as long as the decision rests upon adequate findings supported by evidence having rational probative force[.]").

The Court also rejects plaintiff's argument that the ALJ erred by relying on the "vague" medical opinion of Dr. Liu. As noted above, plaintiff underwent a consultative internal medical examination on February 26, 2018. (Tr. 583-87) At that time, Dr. Liu conducted a thorough examination of plaintiff and issued a detailed report explaining plaintiff's subjective complaints as well as his own clinical findings. (*Id.*) Dr. Liu ultimately opined that plaintiff had "mild-to-moderate limitation[s] for prolonged walking, bending, and kneeling." (Tr. 585) The ALJ found Dr. Liu's opinion to be persuasive. (Tr. 22) The ALJ then formulated an RFC which accounted for the limitations assessed by Dr. Liu. Specifically, the RFC limited plaintiff to light work with only occasional bending and kneeling. (*Id.*) The RFC also required that plaintiff be given a sit/stand option and the ability to change positions every 30 minutes, consistent with plaintiff's own testimony that he is able to either sit or stand for up to 45 minutes at a time. (Tr. 20)

To be sure, an RFC for light work is consistent with a finding of mild to moderate limitations in prolonged walking, bending, and kneeling. *See Lewis v. Colvin*, 548 F. App'x 675, 677-78 (2d Cir. Dec. 17, 2013) (RFC assessment for a significant range of light work was supported by consultative examiner opinion of "mild limitations for prolonged sitting, standing and walking."); *Hazelwood v. Comm'r of Soc. Sec.*, 6:12-CV-798, 2013 U.S. Dist. LEXIS 111095 (N.D.N.Y. May 7, 2013) (doctor's opinion that plaintiff had "mild to moderate limitations in walking, pushing and pulling" supported the "ALJ's determination that plaintiff could physically perform  light work"); *Carpenter v. Astrue*, 09-CV-0079, 2010 U.S. Dist. LEXIS 60418, (W.D.N.Y. June 18, 2010) (consultative examiner's opinion that plaintiff was moderately limited in prolonged standing, walking, kneeling and climbing was consistent with ALJ's conclusion that plaintiff could perform light work); *Amons v. Astrue*, 617 F. Supp. 2d 173, 176 (W.D.N.Y. 2009) (examining physician's opinion that plaintiff had moderate limitations in walking, standing, squatting, climbing and reaching supported ALJ's determination that plaintiff could perform a full range of light work with some fingering, reaching and environmental limitations). Moreover, contrary to plaintiff's argument, a consultative examiner's use of the terms "mild" or "moderate" is not impermissibly vague when, like here, the opinion is supported by a physical examination and a medical assessment which is consistent with the record as a whole. *Susan B. v. Comm'r of Soc. Sec.*, 551 F. Supp. 3d 107 (W.D.N.Y. 2021). *See also Richardson v. Comm'r of Soc. Sec.*, 1:16-CV-00658, 2018 U.S. Dist. LEXIS 127384 (W.D.N.Y. July 30, 2018) (although the doctor's source statement was "relatively brief," her opinion was "not impermissibly vague" where "she performed a thorough and complete examination of Plaintiff"); *McLear v. Saul*, 18-CV-1170, 2020 U.S. Dist. LEXIS 56318 (W.D.N.Y. March

31, 2020) ("Here, however, in the context of [consultative physician's] entire report, which discussed both Plaintiff's subjective complaints and [the doctor's] own examination findings, his opinion that Plaintiff had "mild to moderate limitation in repetitive bending and lifting" and "moderate to marked limitation in kneeling and climbing, carrying, and prolonged walking" was not impermissibly vague.) Thus, the Court finds no error in the ALJ's treatment of Dr. Liu's opinion.[9]

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is denied and the Commissioner's motion for judgment on the pleadings (Dkt. No. 14) is granted.

The Clerk of the Court shall take all necessary steps to close the case.

---

[9] To the extent plaintiff contends that the ALJ erred by failing to classify his irritable bowel syndrome ("IBS") or back pain as medically determinable impairments at step two, this argument is rejected. Step two errors are considered harmless where all of claimant's conditions, both severe and non-severe, are considered during the subsequent steps of the sequential process. *Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013). The record here reflects that the ALJ considered and factored in all of plaintiff's impairments, both severe and non-severe, when fashioning the RFC. Indeed, the ALJ incorporated Dr. Liu's restrictions in the RFC, and these restrictions were related to Dr. Liu's diagnosis of chronic back pain. Moreover, the ALJ's thorough discussion of plaintiff's medical records shows that he fully considered all of plaintiff's bowel and urinary problems, including his IBS. (Tr. 20-22) (noting that plaintiff experienced intermittent urinary difficulties when his "IBS was acting up"). Thus, even if a step two error was committed here, it was harmless and is not a basis for remand. *See Waldvogel v. Comm'r of Soc. Sec.*, 16-CV-0868, 2017 U.S. Dist. LEXIS 146652 (N.D.N.Y. Sept. 11, 2017) (failure to find carpal tunnel syndrome severe at step two was harmless error where the ALJ considered evidence of that impairment at the later steps of the sequential evaluation and the evidence did not show that greater restrictions were warranted as a result of that impairment).

**SO ORDERED.**

Dated:      August 17, 2022
             Buffalo, New York

                                      MICHAEL J. ROEMER
                                      United States Magistrate Judge